IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

NORTHERN NATURAL GAS COMPANY,   )
                                )
            Plaintiff,          )          8:08CV68
                                )
      v.                        )
                                )
MARTIN, PRINGLE, OLIVER,        )  ORDER CERTIFYING QUESTION TO
WALLACE & BAUER, L.L.P.,        )  THE KANSAS STATE SUPREME COURT
                                )
            Defendant.          )
_____)

The parties to this action have filed a joint motion requesting the Court to certify the following question of state law to the Supreme Court of Kansas.

> Does an injector of natural gas into underground storage, who demonstrates such gas was originally injected into underground storage but migrated to adjoining property or to a stratum or portion thereof which has not been condemned as allowed by law or otherwise purchased, lose title to or possession of the migrated gas when the gas migrated before July 1, 1993, the effective date of the controlling statute, KAN. STAT. ANN. § 55-1210, and was not captured or reduced to possession by another prior to July 1, 1993?

In support of their motion, the parties jointly contend the proper interpretation of KAN. STAT. ANN. § 55-1210 directly impacts the public interest in Kansas, that the issue presented for certification is likely to recur in the future if left unresolved by the Kansas State Supreme Court, and have stipulated to the following facts:

1. Northern is a Delaware corporation with its principal place of business in Omaha, Nebraska.

2. Martin Pringle is a Kansas limited liability law partnership formed in Kansas.

3. Northern engaged Martin Pringle to represent its legal interests in various matters, including but not limited to, litigation captioned *Northern Natural Gas Company v. Trans Pacific Oil Corporation, et al.,* No. 02-1418-JTM (D. Kan.) (hereinafter *"Trans Pacific"* litigation).

**Natural Gas Storage**

4. The Federal Energy Regulatory Commission ("FERC") is the federal agency charged with overseeing gas storage activities under the Natural Gas Act, 15 U.S.C. § 717, et seq.

5. The Kansas Corporation Commission ("KCC") oversees gas storage operations in Kansas. Among other things, it has created procedural mechanisms for natural gas storage field operators to provide notice of any potential leak of a storage field and procedures for an operator to request an expansion of the boundaries of an existing storage field. *See* KAN. ADMIN. REGS. §§ 82-3-1002(f), 82-3-1003(i), 82-3-1003(k)(l)(B), 82-3-1006(c).

6. In 1993, the Kansas Legislature enacted KAN. STAT. ANN. § 55-1210, which provides, in relevant part, as follows:

(c) With regard to natural gas that has migrated to adjoining property or to a stratum, or portion thereof, which has not been condemned as allowed by law or otherwise purchased:

> (1) The injector . . . shall not lose title to or possession of such gas if such injector . . . can prove by a preponderance

-2-

>of the evidence that such gas was originally injected into the underground storage.

1993 Kan. Sess. Laws, Ch. 102, § 1.

>7. The statute took effect July 1, 1993.

>8. Litigation concerning the general topic of storage gas migration in Kansas has occurred both before and after the enactment of KAN. STAT. ANN. § 55-1210.

**Northern's Natural Gas Storage Activities in Kansas**

>9. Northern owns and operates an underground natural gas storage field in and around Cunningham, Kansas.

>10. The Cunningham Field was discovered in approximately 1931.

>11. Northern is an "injector" within the meaning of KAN. STAT. ANN. § 55-1210.

>12. The shallowest formation in the Cunningham Field is the Kansas City/Lansing formation.

>13. Deeper formations -- including the Simpson formation, the Viola formation and the Arbuckle formation -- were historic producers of oil and gas, but production ultimately depleted the native reserves in these formations.

>14. In approximately the mid- to late-1970's, Northern began its gas storage operations in the Cunningham Field.

>15. The KCC and the Federal Power Commission, the predecessor to FERC, authorized Northern to store gas in the Viola formation.

>16. Later, the KCC and FERC authorized Northern to store gas in the Simpson formation, as well as the Viola formation.

>17. In 1987-1988, Trans Pacific Oil

>Corporation ("Trans Pacific") drilled two wells on property adjacent to the northern certificated boundary of Northern's storage field.
>
>18. The Trans Pacific wells, known as the Park 1 and the Park 1A wells ("Park wells") produced oil as well as natural gas.

**TRANS PACIFIC ACTION**

>19. In November 2002, Northern commenced litigation against Trans Pacific and other related entities, claiming Trans Pacific was producing gas at the Park wells that had migrated from Northern's Cunningham storage field.  One issue in the *Trans Pacific* litigation was whether Northern was permitted to make a claim for gas that had allegedly migrated to the Park wells before July 1, 1993, the effective date of KAN. STAT. ANN. § 55-1210, but which had not been produced by Trans Pacific prior to that date.
>
>20. In the Trans Pacific litigation, the District Court submitted a Special Verdict Form to the jury with the following as Question 1: "On or after July 1, 1993, did Northern's stored gas migrate to the area of the 'No. 1 Park' and 'No. 1 Park A' wells?" The jury answered "no" to this question.
>
>21. On appeal, Northern challenged the District Court's interpretation of KAN. STAT. ANN. § 55-1210 contained in Question 1 of the Special Verdict Form.
>
>22. The Tenth Circuit issued an Order and Judgment in which it held as follows on that issue:
>
>>However, Northern did not object to Special Verdict Form Question 1, which contained the court's "interpretation" of § 55-1210 and specifically asked the jury to determine whether Northern's stored gas had migrated to Trans Pacific's

-4-

>wells on or after July 1, 1993, at either the instruction conference or upon it being submitted to the jury. Therefore, Northern has waived the right to appellate review. *Northern Natural Gas Co. v. Trans Pacific Oil Corp.*, 248 Fed. Appx. 882, 888-89 (10th Cir. 2007).

**NEBRASKA LITIGATION**

>23. Northern asserts a claim of professional negligence/malpractice against its former legal counsel, Martin Pringle, relating to the Trans Pacific litigation.

>24. To prevail on its claim, Northern must demonstrate, among other things, an alleged breach in failing to preserve for appeal the issue of the proper interpretation of KAN. STAT. ANN. § 55-1210.

It appears to the Court that an issue of Kansas state law may be determinative of this litigation and there is no clear controlling Kansas state law precedent. Pending determination by the Kansas State Supreme Court as to whether or not it will accept for review the certified question,

>IT IS ORDERED:

>1) This action is stayed pending proceedings in that Court. If the Kansas State Supreme Court accepts review, then the action will be considered stayed until ruling by the Kansas State Supreme Court. No responsive pleadings need be filed at this time.

>2) The clerk of this court is hereby directed to transmit forthwith to the Kansas State Supreme Court, under the

-5-

official seal of the United States District Court for the District of Nebraska, a copy of this order.

DATED this 2nd day of April, 2008.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court